IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| HARRELLA GOODWIN : | |
| : | CIVIL ACTION |
| : | |
| v. : | No.   06-162 |
| : | |
| AMERICAN AIRLINES INC., d/b/a : | |
| AMERICAN EAGLE : | |

### MEMORANDUM AND ORDER

**Juan R. Sánchez, J.**                                                                                      **April 21, 2008**

American Airlines Inc. (American Eagle) asks this Court to dismiss Harrella Goodwin's Complaint of wrongful discharge on grounds the Railway Labor Act (RLA), 45 U.S.C. §§ 151-188, preempts the Virgin Islands Wrongful Discharge Act (WDA), V.I. Code 24, § 76.  Because I find the RLA does not preempt the Wrongful Discharge Act in the absence of a collective bargaining agreement, I will deny American Eagle's Motion to Dismiss in part.

**FACTS**[1]

Goodwin was fired in October 2005 after working for American Eagle for 10 years.  She was accused of giving $1,135.00 in ticket discounts without authorization.  She denies any dishonesty and says her dismissal was a breach of an implied employment contract. Goodwin was scheduled to retire at age 55 in 2007, when she would have been entitled to life-time traveling for herself and family.  Goodwin argues her discharge violates the Wrongful Discharge Act.  She also seeks damages for defamation in employment and intentional infliction of emotional distress.

---

[1]When I consider a Motion to Dismiss, I accept all allegations in, and reasonable inferences from, the Complaint as true and view them in the light most favorable to Goodwin.  *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir. 1989).

American Eagle asserts the RLA bars the wrongful discharge claim and argues Goodwin has failed to plead sufficiently claims for breach of contract, defamation, or intentional infliction of emotional distress. I will grant American Eagle's motion with respect to the state law claims of breach of contract and defamation, but deny it with respect to the Wrongful Discharge Act and intentional infliction of emotional distress claims.

**DISCUSSION**

This Court may only grant a Rule 12(b)(6) motion "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *D.P. Enter. Inc. v. Bucks County Cmty. Coll.,* 725 F.2d 943, 944 (3d Cir. 1984). The first question I must decide is whether the RLA preempts the Wrongful Discharge Act.

The Virgin Islands Wrongful Discharge Act applies to all employees in the Virgin Islands "unless modified by union contract." 24 V.I. C. § 76 (1996).[2] A Virgin Islands collective bargaining

---

[2]Section 76 of the WDA, enacted by the Virgin Islands legislature in 1986, sets forth the grounds for lawful employee discharge as follows:
  (a) Unless modified by union contract, an employer may dismiss any employee:
      (1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;
      (2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;
      (3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;
      (4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the *236 employer's business after the employee's working hours are completed;
      (5) who performs his work assignments in a negligent manner;
      (6) whose continuous absences from his place of employment affect the interests of his employer;
      (7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;
      (8) who is dishonest; or

agreement may set discharge terms contrary to the Wrongful Discharge Act.  *St. Thomas– St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the U.S. Virgin Islands* (*Hotel Association I*), 218 F.3d 232, 236 (3d Cir. 2000).  The Virgin Islands Revised Organic Act authorizes the Virgin Islands legislature to enact territorial laws "not inconsistent with the laws of the United States made applicable to the Virgin Islands."  48 U.S.C. § 1574(a); *see Edwards v. Hovensa, LLC*, 497 F.3d 355, 360 (3d Cir. 2007) (parsing the Revised Organic Act and the jurisdiction of the courts of the Virgin Islands).  Virgin Islands state law may be preempted by federal law by express preemption, field preemption, or conflict preemption.  *Hotel Association I*, 218 F.3d at 238.

American Eagle is a common carrier under the RLA.  45 U.S.C. § 181.  The RLA requires "system-wide" organization of employees within a craft or class, *Aircraft Service Int'l Group*, 31 N.M.B. 508, 515 (2004), to "promote peaceful relationships between the carriers and their employees [and] prevent interruptions of transportation." S. Rep. No. 606, 69th Cong., 1st Sess. 3 (1926).[3]

---

> (9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him. . . .

24 V.I. CODE R., § 76 (2007).

[3] The statute articulates its purpose less concisely:
> The purposes of the chapter are: (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization; (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

45 U.S.C. § 151a

American Eagle argues the Wrongful Discharge Act is preempted because territorial law conflicts with the RLA's goals and policies.  In *Hotel Association II*, the Third Circuit reasoned the Wrongful Discharge Act did not apply to supervisors under Section 301 of the Labor Management Relations Act (LMRA), 20 U.S.C. § 185.  *St. Thomas-St. John Hotel & Tourism Ass'n. Inc. v. Government of U.S. Virgin Islands ex rel. Virgin Islands Dept. of Labor (Hotel II)*, 357 F.3d 297, 304 (3d Cir. 2004).  The Court reasoned the only way an employer could alter the Wrongful Discharge Act would be to enter into a union contract with the supervisors; but, supervisors are management for whom unionizing is counterproductive.  *Id.*

American Eagle asks this Court to apply the same logic to the question at hand, arguing the only way American Eagle could exempt its employees from the Wrongful Discharge Act would be to negotiate a union contract with them.  According to American Eagle, under the RLA, any union contract would have to be system-wide, from California to Puerto Rico.  American Eagle asserts the result would be that the Virgin Islands legislature could force a national air carrier to unionize its entire workforce to resolve the conflict between the RLA and the Wrongful Discharge Act.  Therefore, American Eagle concludes, the RLA must preempt the Wrongful Discharge Act.

Preemption, the power of federal law to displace state law substantively, derives from the Supremacy Clause.  U.S. Const. Art. VI, cl. 2; *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985) (citing *Gibbons v. Ogden*, 9 Wheat. 1, 6 L.Ed. 23 (1824) (explaining a state law contrary to or interfering with a federal law must yield to the federal law)).  Whether federal law preempts a state law establishing a cause of action is a question of congressional intent. *Allis-Chalmrs*, 471 U.S. at 208.  Preemption of employment standards "within the traditional police power of the State . . . should not be lightly inferred."  *Hawaiian Airlines, Inc. v. Norris*  512 U.S. 246, 252  (1994)

(citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987), and *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 715 (1985) (holding a federal statute will be read to supersede a State's historic powers only if this is the clear and manifest purpose of Congress)).

The Supreme Court has found complete[4] preemption only in three instances: under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, *Caterpillar*, 482 U.S. at 393; under section 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a), *Metropolitan Life Co. v. Taylor*, 481 U.S. 58, 66 (1987); and, under sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85-86. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 11 (2003). When Congress enacted the RLA, it did not preempt "the field of regulating working conditions . . ." *Terminal Railroad Assn. of St. Louis v. Trainmen*, 318 U.S. 1, 7 (1943) (holding "the enactment by Congress of the Railway Labor Act was not a pre-emption of the field of regulating working conditions").

Since preemption is not complete under the RLA, the question then becomes which employment claims are preempted by the RLA. When state law claims are "inextricably intertwined" with the meaning of terms in a collective bargaining agreement, they are preempted by federal labor law. *Allis-Chalmers*, 471 U.S. at 213. In such instances, state law "must yield to the

---

[4]The question of whether preemption is complete or ordinary is only relevant to the jurisprudence of removal. Ordinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). A case may not be removed to federal court on the basis of a federal defense, including that of federal preemption. *Id.* at 393. Complete preemption is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction which looks beyond the complaint to determine if the suit is, in reality, "purely a creature of federal law," creating the federal question jurisdiction requisite to removal to federal courts. *Metropolitan Life Ins. v. Taylor*, 481 U.S. 58, 63-64 (1987) .

developing federal common law, lest common terms in bargaining agreements be given different and potentially inconsistent interpretations in different jurisdictions." *Adames v. Executive Airlines, Inc*. 258 F.3d 7, 12 (1st Cir. 2001) (citing *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994)).

The RLA's mechanism for resolving minor disputes does not preempt causes of action to enforce rights that are independent of a collective bargaining agreement. *Norris*, 512 U.S. at 256; *see also Sullivan v. American Airlines, Inc*., 424 F.3d 267, 278 (2d Cir. 2005) (holding the RLA did not support the removal from state court to federal court of claims based solely on state law). When federal law, not the collective bargaining agreement, is the source of a plaintiff's discrimination claim, the RLA does not preempt the claim. *Pittari v. American Eagle Airlines, Inc*., 468 F.3d 1056, 1060 (8th Cir. 2006) (holding "an ADA discrimination claim is a federal statutory right, not a contractual right embodied in the collective bargaining agreement").

When the resolution of a state law claim depends on an interpretation of a collective bargaining agreement, the claim is preempted. *Lingle v. Norge Div. of Magic Chef, Inc*. 486 U.S. 399, 413 (1988) (holding "an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement"). If the state-law claim "can be resolved without interpreting the agreement itself, the claim is independent of the agreement for § 301 pre-emption purposes." *Lingle*, 486 U.S. at 408-410. In *Norris*, the Court extended its holding in *Lingle* to the RLA, holding when the issues are "purely factual questions" about an employee's conduct or an employer's conduct and motives, they do not "requir[e] a court to interpret any term of a collective-bargaining agreement." *Norris*, 512 U.S. at 261-262 (collecting cases). A state law cause of action "is not preempted by the RLA if it involves rights and obligations that exist independent of the collective-bargaining

6

agreement." *Id.* at 260.  When state law was the only source of the right asserted by the employee, it is not preempted.  *Id.* at 265.

In this case, there is no collective bargaining agreement; therefore, state law, the Wrongful Discharge Act, is the only source of the right Goodwin is asserting.  The Wrongful Discharge Act is not completely preempted by the RLA.  *Terminal R.R. Ass'n of St. Louis*, 318 U.S. at 7.  A system-wide, uniform interpretation of a collective bargaining agreement, the intent of Congress in enacting the RLA, is not relevant in the absence of a collective bargaining agreement.  A ruling in the Virgin Islands will affect only employees in the Virgin Islands, just as the finding in *Pittari*, affected only those within reach of the Eighth Circuit.

The two *Hotel Association* cases establish the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169, does not preempt the Wrongful Discharge Act, *Hotel Association I*, 218 F.3d at 238, but that section 7 of the NLRA as applied to supervisors does preempt the Wrongful Discharge Act on grounds the Wrongful Discharge Act would "flout the national policy against compulsion upon employers from either federal or state agencies to treat supervisors as employees." *Hotel II*, 357 F.3d at5 304.  The Third Circuit reasoned "the NLRA contains no express preemption provision . . . any NLRA preemption analysis starts with the basic assumption that Congress did not intend to displace state law." *Hotel Association I*, 218 F.3d at 238.  The Third Circuit then held the Wrongful Discharge Act "neither regulates the process of bargaining nor upsets the balance of power of management on one side and labor on the other that is established by the NLRA." *Hotel I*, at 244.  The Court continued, the Wrongful Discharge Act "does not force an employee to choose between collective bargaining and the protections of state law; rather it protects all Virgin Islands employees, but gives employees the option of relinquishing the territorial statutory protections through the terms

7

of a collective bargaining agreement." *Hotel I*, at 245.

In *Hotel II*, the Court found the Wrongful Discharge Act indirectly compelled an employer to bargain collectively with supervisors by requiring an employer who wishes to alter the Act's grounds for terminating a supervisor enter into a collective bargaining agreement. Since this limitation constitutes pressure to bargain with supervisory employees, the WDA, as applied to supervisors, conflicts with Section 14(a) of the NLRA   *Hotel II*, 357 F.3d at 304.

The present case, however, does not "indirectly create pressure to bargain," because the question in *Hotel Association II*, was whether supervisors were part of an already unionized class. *Hotel Association II*, 357 F.3d at 304. The preemption the Third Circuit found was narrowly tailored to solve the question raised in the two *Hotel Association* cases: how a company can make management decisions without running afoul of either a union contract or the Wrongful Discharge Act, exactly the problem the NLRA addresses. It does not follow that any case in which federal law might be raised is necessarily governed by *Hotel Association II*. When a question can be resolved under state law without interpreting a collective bargaining agreement, the RLA does not preempt state law. *Norris*, 512 U.S. at 261-62; *Lingle*, 486 U.S. at 408-10. Since there is no collective bargaining agreement to interpret, state law applies in this case.

Since the RLA does not preempt the Wrongful Discharge Act, American Eagle alternatively argues analysis under Wrongful Discharge Act mirrors *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973): the Plaintiff must establish a prima facie case of wrongful discharge, then the employer must articulate some statutorily-approved reason for the discharge and, finally, the burden shifts back to the plaintiff to show the proffered reason is pretextual. *Rajbahahoorsingh v. Chase Manhattan Bank*, 168 F. Supp. 2d 496, 504-05 (D. V.I. 2001). American Eagle argues to prove pretext,

Goodwin must show the airline was wrongfully motivated.

Goodwin replies, under the standard for a motion to dismiss under Rule 12(b)(6), she has made out a case for pretextual firing because she did the same thing everyone had done for years, discounting tickets without authorization. Goodwin argues the real reason American Eagle wanted her out was to avoid retirement benefits and unlimited free flights for retirees and their families. At this stage in the litigation, I find no grounds on which to dismiss Goodwin's claim under Rule 12(b)(6).

Goodwin also brings state law claims of breach of contract, defamation, and intentional infliction of emotional distress. Goodwin's claim of breach of contract and defamation in employment are insufficiently pleaded to survive this motion for dismissal. Goodwin failed to plead any fact through which the existence of an employment contract or defamation in employment could be inferred.

Goodwin's claim for intentional infliction of emotional distress survives under the standard for a motion under Rule 12(b)(6); but, I will revisit the issue at a later stage of the proceedings. In *Smith v. Elias*, 2007 WL 4209701, at *6 (V.I. Super. Ct., Oct. 11, 2007), the Superior Court of the Virgin Islands held "[e]mployer retaliation presumptively meets the extreme and outrageous component for intentional infliction of emotional distress."

Even though only state law questions remain, this Court retains jurisdiction based on the diversity of the parties and the amount in controversy; Goodwin is a resident of St. Croix, U.S. Virgin Islands, and American Eagle is headquartered in Ft. Worth, Texas. 28 U.S.C. §§ 1332.

An appropriate order follows:

**ORDER**

And now this 21ˢᵗ day of April, 2008, Defendant's Motion to Dismiss (Document 15) is GRANTED in part and DENIED in part: Counts 1 and 3 are DISMISSED, Counts 2 and 4 survive.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez                                    J.

**ATTEST:**
**WILFRED F. MORALES**
**CLERK OF THE COURT**

By: _____
     Deputy Clerk

Copies to:

Martial A. Webster, Esq
Charles E. Engeman, Esq.
Curtis V. Gómez, Chief Judge
Geoffrey W. Barnard, Magistrate Judge